UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN AVERY,
   Plaintiff,

  v.               Case No. 12-CV-0071

CALUMET COUNTY, KENNETH KRATZ,
PEGGY LAUTENSCHLAGER, R. NICK STAHLKE,
KIM J. SKORLINSKI, THOMAS FASSBENDER,
MARK WIEGERT, WENDY BALDWIN,
GERALD A. PAGEL, BARBARA VAN AKKEREN,
DONALD A. POPPY, and SHERRY CULHANE,
   Defendants.

## DECISION AND ORDER

  Steven Avery, a Wisconsin state prisoner, has filed this action under 42 U.S.C. § 1983 against Calumet County and various officials of Calumet County and the State of Wisconsin. He claims that the defendants violated his rights under the Fourth Amendment in searching and seizing two of his vehicles. The defendants have filed motions to dismiss the complaint on various grounds. I address the defendants' motions in this order, along with several related motions.

  The events described in Avery's complaint[1] arise out of the investigation into the murder of Teresa Halbach, of which Avery was convicted. Avery alleges that on November 5, 2005, law-enforcement officers questioned him and his family at their property in the Town of Stephenson, which is located in Marinette County, Wisconsin. After the officers

---

[1]Avery has filed an amended complaint, which appears at ECF No. 9, and references in this opinion to the complaint are to this document. However, Avery attached exhibits to his original complaint that he did not also attach to his amended complaint. Because Avery references those exhibits in his amended complaint, I will treat them as part of the amended complaint.

left, Avery's nephew, Brian Dassey, drove Avery's Pontiac Grand Am off of the property. Shortly after he did so, he was pulled over by law-enforcement officers. The officers had the Grand Am towed away. At approximately the same time, law-enforcement officers returned to the family property and seized an International Harvester flatbed truck. The officers who effected the seizures of the Grand Am and the Harvester are not identified in the complaint.

Avery alleges that the officers who seized the Grand Am and the Harvester did not have a warrant. However, Avery attached a warrant authorizing the search of both vehicles to his complaint. (Compl. Ex. 2.) The warrant was endorsed by defendant Wendy Baldwin of the Calumet County Sheriff's Department at 10:52 p.m. on November 5, 2005. Avery alleges in his complaint that the Grand Am and the Harvester were seized at approximately 8:00 p.m. on November 5, and so for purposes of the present motions, I accept as true Avery's allegation that the seizures were warrantless. However, this does not mean that any subsequent searches of the vehicles were made without a warrant, and Avery does not allege that any search of the vehicles occurred before the warrant was issued.

From an attachment to the complaint (Exhibit 4), it appears that the Harvester truck was searched at various times on November 6 and November 7. Apparently, nothing of interest was found, and Avery alleges that the truck was returned to Avery's family "within days" of its seizure. (Am. Compl. ¶ 32.)

Avery alleges that on November 9, 2005, defendant Peggy Lautenschlager, who at the time was the Wisconsin Attorney General, "signed off" on the Grand Am's being held by the state for analysis. (Am. Compl. ¶ 33.) Avery alleges that defendants R. Nick Stahlke and Sherry Culhane, who were forensic scientists working in Wisconsin's state

2

crime lab, entered the Grand Am, collected forensic evidence from it, and analyzed what they had found. Their findings were memorialized in a report dated January 31, 2006.

Avery alleges that, at some point (he does not specify when), custody of the Grand Am was transferred to Calumet County, where it remained for "an extended period of time." (Am. Compl. ¶ 37.) Eventually (again, Avery does not specify when), the Grand Am was released to Avery's family members. Avery alleges that at the time it was released the Grand Am needed to be repaired and that it was missing a substantial amount of gas.

Avery's first claim is that the seizures of the Grand Am and the Harvester without a warrant violated the Fourth Amendment. However, the person or persons who actually made these allegedly warrantless seizures are not identified in the complaint, and no allegations in the complaint indicate that any of the named defendants were personally involved in the allegedly warrantless seizures of the two vehicles. Rather, all of the conduct attributed to the named defendants either occurred after the warrant had been issued or involved the effort to procure the warrant in the first place. Therefore, Avery's claim based on the warrantless seizure of the two vehicles must be dismissed. See, e.g., Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003) (stating that "§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim").[2]

---

[2]Although Calumet County is a defendant, Avery does not allege that the officers who seized the vehicles without a warrant were agents of Calumet County. In any event, the facts alleged in the complaint do not give rise to a plausible inference that the vehicles were seized without a warrant pursuant some official policy, practice or custom of Calumet County. Thus, Calumet County cannot be liable for the allegedly warrantless seizures under § 1983. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

3

Avery's next claim is that the search warrant that was issued for the vehicles was defective and that therefore the defendants who actually searched the vehicles are liable under § 1983. Avery alleges that the warrant was defective for the following reasons: (1) it was not supported by probable cause; (2) Judge Poppy, the judge who issued the warrant, was not presented with the affidavit made in support of the warrant; (3) Judge Poppy, who was a circuit court judge in Calumet County, could not issue a warrant relating to a criminal investigation that was initiated in Manitowoc County; (4) Judge Poppy was not actually a judge because the document containing his oath of office does not bear the seal of the officer who administered the oath; (5) the warrant did not bear the seal of the court; and (6) the defendants failed to obtain an "extension" of the search warrant. However, as explained below, the warrant was not defective for any of these reasons.

First, Avery's complaint establishes that the warrant was supported by probable cause. Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. See, e.g., Illinois v. Gates, 462 U.S. 213, 238 (1983). In the present case, the warrant was based on a sworn affidavit, which Avery has attached to his complaint. (Compl. Ex. 1.) That affidavit sets forth facts that were sufficient to induce a reasonably prudent person to believe that a search of the vehicles would uncover evidence of a crime. The affidavit, which was sworn on November 5, 2005, states that Teresa Halbach had been missing since October 31, 2005; that she had been driving a Toyota Rav 4; that Steven Avery had told the Manitowoc County Sheriff's Department that Halbach had been on his property on October 31, 2005; that searchers had found Halbach's Rav 4 on Avery's property in Manitowoc County in a condition that made it appear as though someone had tried to conceal it; and that Avery had informed

4

investigators that the Grand Am and the Harvester, which were currently located on Avery's property in Marinette County, had just been driven there from the Manitowoc property earlier on November 5, 2005.  From these facts, a reasonably prudent person could conclude that there was a fair probability that Halbach had been the victim of a crime and that evidence of that crime would be found in the Grand Am and/or the Harvester.  Thus, the warrant was supported by probable cause.

Second, the allegations of Avery's complaint do not give rise to a plausible claim that Judge Poppy was not presented with the affidavit in support of the search warrant. The affidavit was submitted by Gerald Pagel, the Calumet County Sheriff, and the warrant states in its opening paragraph that it was based on Pagel's written complaint.  (See Compl. Ex. 2.)  Judge Poppy signed the warrant, and no facts pleaded in the complaint support an inference that he did so without having seen Pagel's affidavit.  Although the affidavit indicates that it was sworn before a notary public rather than Judge Poppy, that suggests nothing more than that Pagel did not appear in person before Judge Poppy.  It does not suggest that Judge Poppy did not see Pagel's affidavit.

Third, nothing in the Fourth Amendment or Wisconsin law requires a search warrant to be issued by a judge of the county in which the underlying criminal investigation was initiated.  To the contrary, Wisconsin law provides that a search warrant may be issued by any judge, see Wis. Stat. § 968.12(1), and that it may be executed anywhere in the state, see Wis. Stat. § 968.12(4).  Thus, the warrant was not invalid because it was issued by a judge in Calumet County.

Fourth, the lack of a seal on Judge Poppy's oath of office did not affect the warrant's validity.  Judge Poppy took the oath of office before the Clerk of the Calumet County Circuit

5

Court, who signed the document memorializing his having taken the oath. (See Am. Compl. Ex. 7.) Although the document memorializing the taking of the oath contains a space for a notarial officer's seal or stamp, there is nothing in the Wisconsin constitution or statutes indicating that a judge's oath is invalid unless the document memorializing the taking of the oath bears a seal or a stamp. In any event, none of the defendants in this suit could have known that the document memorializing Judge Poppy's having taken the oath of office was missing a seal, and so even if a seal was required, the defendants in this case would be entitled to qualified immunity. See Lowrance v. Pflueger, 878 F.2d 1014, 1017 (7th Cir. 1989) (stating that even if warrant is defective, defendant who executes warrant is not liable under § 1983 unless defendant had no reasonable good-faith belief in the legality of the search or seizure).

Fifth, the lack of a seal on the warrant itself did not affect the warrant's validity. Under Wisconsin law, a search warrant need only be signed by a judge and be directed to a law-enforcement officer. See Wis. Stat. § 968.12(1). Although Avery points to a Wisconsin statute requiring all writs to bear the seal of the court, Wis. Stat. § 753.04, no published Wisconsin case has applied this requirement to search warrants. Moreover, the official form for search warrants that appears in the Wisconsin statutes does not indicate that a seal is required. See Wis. Stat. § 968.23. In any event, even if Wisconsin law required the warrant to bear the court's seal, there is no case holding that the Fourth Amendment is violated when a search or seizure is conducted pursuant to a warrant that lacks a seal required by state law. Thus, the defendants in this case would be entitled to qualified immunity. See Lowrance, 878 F.2d at 1017.

6

Sixth, the defendants were not required to obtain an extension of the warrant for any reason. Under Wisconsin law, a search warrant must be executed and returned within five days. See Wis. Stat. § 968.15(1). In the present case, the warrant was issued on November 5, 2005, and it was returned on November 7, 2005. (See Compl. Ex. 3.) Thus, the warrant was executed within the time permitted by law. Although the Grand Am remained in the custody of the state and Calumet County beyond five days, that was because it constituted evidence of a crime, since law-enforcement officers found bloodstains in the vehicle during their search.[3] Wisconsin law provides that property that has been seized pursuant to a valid warrant may remain in the custody of law enforcement until it is no longer needed as evidence. See Wis. Stat. § 968.19. Thus, no extension of the warrant was needed.

Avery's final claim is that the defendants are liable for damaging the Grand Am and for using the gas that was in the tank at the time it was seized. The Fourth Amendment is violated when excessive or unnecessary destruction of property occurs during the course of an otherwise valid search. United States. v. Ramirez, 523 U.S. 65, 71 (1998); Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). In the present case, however, Avery does not allege that any of the named defendants damaged his vehicle or used his gas during the course of any search of the vehicle. Rather, he uses the passive voice and alleges only

---

[3] Avery notes that the search warrant did not explicitly authorize the seizure of the Grand Am. While that may be true, the warrant did explicitly authorize the seizure of any forensic evidence found in the Grand Am, including blood. Avery's complaint and the attachments to it establish that bloodstains were found in the Grand Am. Obviously, bloodstains in a vehicle cannot be seized separately from the vehicle itself, and thus in order to seize the bloodstains found in the Grand Am during the search, law-enforcement officers needed to also seize the Grand Am itself.

7

that the Grand Am was damaged and that it was missing gas when it was returned. No facts alleged in the complaint connect this damage or the missing gas to the actions of any of the named defendants. Therefore, this claim will be dismissed.

Accordingly, **IT IS ORDERED** that the defendants' motions to dismiss (ECF Nos. 16 & 30) are **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Baldwin, Calumet County, Pagel, Van Akkeren, and Wiegert's motion to stay discovery (ECF No. 22) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to supplement his complaint (ECF No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants Baldwin, Calumet County, Pagel, Van Akkeren, and Wiegert's motion to strike (ECF No. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing this action.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2012.

s/ Lynn Adelman
LYNN ADELMAN
District Judge